# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

TROY OLSON,

Plaintiff,

v.

UNION PACIFIC RAILROAD
COMPANY,

Defendant.

Case No. 24-cv-4233 (LMP/ECW)

**ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Benjamin P. Tobin, **Pratt & Tobin, P.C., East Alton, IL**; and Michael P. McReynolds and Joseph M. Sayler, **Bolt Law Firm, Anoka, MN**, for Plaintiff.

Thomas A.P. Hayden and Jamie V. Harrman, **Union Pacific Railroad Company, Chicago, IL**; and Dan J. Gendreau, **Donna Law Firm, P.C., Minneapolis, MN**, for Defendant.

Plaintiff Troy Olson brought this lawsuit against Defendant Union Pacific Railroad Company asserting negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, relating to injuries Olson suffered while he was employed by Union Pacific. *See generally* ECF No. 1. Union Pacific now moves for summary judgment and seeks dismissal of Olson's claims. ECF No. 45. For the reasons below, Union Pacific's motion is granted in part and denied in part.

## BACKGROUND

On December 10, 2021, Olson and his son, Jonathan Olson ("Jonathan"),[1] both of whom were Union Pacific employees, met at their worksite in Albert Lea, Minnesota, to

---

[1]    To avoid confusion, the Court refers to Plaintiff Troy Olson as "Olson" and his son Jonathan Olson as "Jonathan."

remove old Union Pacific railroad tracks. *See* ECF No. 48 at 9:5–13, 65:14–66:1, 71:1–12; ECF No. 49 at 4:25–6:23, 9:21–10:9. Olson was using a hydraulic spike puller to remove rail spikes securing the rail to the ground, while Jonathan used a speed swing—a large machine with a boom arm that is used to lift and manipulate sections of rail, *see* ECF No. 46 at 3, 3 n.1—to remove pieces of rail after Olson removed the spikes, *see* ECF No. 48 at 71:7–12; ECF No. 49 at 11:5–8, 30:23–31:10.

Union Pacific has rules for operating machinery like the speed swing. Relevant here, Rule 1.23 states: "Without proper authority employees must not alter, nullify, change the design of or in any manner restrict or interfere with the normal function of any device or equipment . . . except in case of emergency. Employees must report to the proper supervisor changes made in an emergency." ECF No. 50 at 20:22–21:13. Also relevant is Rule 43.5, which requires that a machine operator "stop the engine when practical" and "lower or securely support . . . suspended loads" before exiting the machine. *Id.* at 96:16–97:4. The speed swing Jonathan was using had a safety mechanism that was intended to stop the boom arm from moving when the left armrest is lifted. *See* ECF No. 48 at 107:1–5; ECF No. 50 at 15:16–22. Lifting the armrest is necessary to get into and out of the speed swing. ECF No. 48 at 107:1–5. Jonathan was not trained to use the speed swing. ECF No. 49 at 15:5–11, 61:12–14. Nevertheless, on the date of the incident, Jonathan tested the various functions to "get used to" the speed swing for about 30 minutes before using it at the worksite. *Id.* at 29:2–8.

At some point while they were working, Olson told Jonathan not to pull up a portion of rail with the speed swing until Olson was "done pulling the spikes." ECF No. 48

at 72:14–19.  Jonathan lifted the armrest and began exiting the speed swing to assist Olson with pulling the spikes, ECF No. 49 at 36:1–18, 37:3–4, but he did not stop the speed swing's engine or lower the piece of rail that was attached to its boom arm before doing so, *see* ECF No. 50 at 92:19–23, 109:13–18.  While exiting the speed swing, Jonathan's jacket or arm moved the joystick that controlled the boom arm's motion.  *See* ECF No. 49 at 85:18–21.  Unbeknownst to Jonathan, the boom arm began moving, and the piece of rail attached to it struck Olson in the back and knocked him to the ground.  ECF No. 48 at 73:2– 5, 84:14–16; ECF No. 49 at 34:8–11, 37:3–8; ECF No. 50 at 36:7–11.  The boom arm dragged the piece of rail over Olson and eventually released it onto the back of Olson's knee.  *See* ECF No. 50 at 36:7–17; ECF No. 48 at 86:13–18.  Jonathan ran to Olson and was able to slide the rail off him.  ECF No. 50 at 36:18–22.  Jonathan then took Olson to the emergency room, where Olson reported injuries to his shoulder and knee.  ECF No. 48 at 91:5–13.  Medical personnel took X-rays of Olson's shoulder, which revealed a hairline fracture.  *Id.* at 91:7–92:9.  No imaging was taken of Olson's knee.  *Id.* at 91:7–15.  Olson was discharged with a sling for his shoulder and directed to "work light duty" with "[n]o use of [his] right arm."  *Id.* at 91:7–9, 92:11–13.  Olson and Jonathan then returned to the worksite to file reports regarding the incident.  *Id.* at 92:22–25.

Immediately following the incident, Greg Porter, a Union Pacific Work Equipment Manager, inspected the speed swing.  *Id.* at 108:2; ECF No. 50 at 5:16–18, 14:15–20. Porter discovered that the armrest safety mechanism was "broken and disabled" and had been rewired and "bypassed" so that the boom arm "would work nonstop," even with the armrest lifted.  ECF No. 50 at 15:16–17:12.  Jonathan was unaware that the safety

3

mechanism had been bypassed and was not properly functioning.  *See* ECF No. 49 at 63:20–24, 97:9–11.

Ryan Cash, a Union Pacific mechanic, had inspected the speed swing on April 8, 2021, about eight months before the incident, and found it was "safe to operate."  ECF No. 49 at 55:6–18; *see* ECF No. 50 at 56:11–57:5.  Between April 8 and December 10, 2021, the date of the incident, there were no reports that the speed swing's armrest safety mechanism was broken or nonfunctional.  *See* ECF No. 48 at 63:3–10, 64:11–16; ECF No. 49 at 61:5–11.  Porter attempted to determine who bypassed the safety mechanism by "ask[ing] the mechanics that cover that area" and "the operators and people present" when the incident occurred, but "nobody had any knowledge that they would admit to."  ECF No. 50 at 16:16–17:12.

Olson brought this lawsuit against Union Pacific on November 20, 2024, claiming that Union Pacific is liable under FELA because Union Pacific failed to provide safe equipment or a reasonably safe place to work.  *See* ECF No. 1 ¶ 8.  Olson alleges that he has sustained "severe and permanent injuries" to various parts of his body, has diminished earning capacity, and has been and will be required to spend money for medical care, among other monetary and nonmonetary harms.  *Id.* ¶ 9.

Union Pacific moves for summary judgment and seeks dismissal of Olson's claims.  ECF No. 45.  The parties timely submitted briefing, ECF Nos. 46, 53, 56, and the Court held a hearing on Union Pacific's motion on May 12, 2026, ECF No. 57.  At the hearing, counsel for Olson referenced several cases which were not cited in the parties' briefing and subsequently sent correspondence to the Court and to Union Pacific discussing those cases.

*See* ECF No. 58 at 1.  Counsel for Union Pacific objected to the correspondence but also requested an opportunity to brief the cases if the Court considered them.  *Id.*  The Court ordered the parties to submit additional briefing, *id.* at 2, which the parties timely submitted, ECF Nos. 59–60.

**ANALYSIS**[2]

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 966 (8th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).  On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).  The nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Black v. Swift Pork Co.*, 113 F.4th 1028, 1031 (8th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A party asserting that a fact is, or is not, genuinely disputed

---

[2]    Olson argues that Union Pacific's opening brief in support of its motion for summary judgment "should be stricken and not considered" because Union Pacific did not include with its opening brief a certificate of compliance with this District's Local Rule 7.1(f), which governs word-count limitations for civil motions.  ECF No. 53 at 1; *see* D. Minn. L.R. 7.1(f)(2).  The application of local rules "is a matter peculiarly within the district court's province," and it is within the Court's "broad discretion to 'determine what departures from its rules may be overlooked.'"  *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1055 (8th Cir. 2025) (quoting *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 489 (8th Cir. 1992)).  Given that Union Pacific's briefing does, in fact, comply with Local Rule 7.1(f)(1), the Court overlooks its technical noncompliance with Local Rule 7.1(f)(2) and denies Olson's request to strike Union Pacific's opening brief.

must support that assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court "must not weigh evidence or make credibility determinations," *Sanimax USA, LLC v. City of South St. Paul*, 95 F.4th 551, 558 (8th Cir. 2024) (internal quotation marks omitted) (citation omitted), but "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," *Ricci*, 557 U.S. at 586 (citation omitted).

## I.    FELA

"Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year," Congress in 1908 created FELA to "shift[] part of the 'human overhead' of doing business from employees to their employers." *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 983 (8th Cir. 2020) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)). To that end, FELA imposes on employers a "duty to provide its employees with a reasonably safe workplace, including safe equipment," *Peyton v. St. Louis Sw. Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992), and provides railroad employees a federal cause of action for injuries "resulting in whole or in part from the negligence of any of the [railroad's] officers, agents, or employees," 45 U.S.C. § 51. To "'further FELA's humanitarian purposes,' Congress removed various common-law obstacles to an employee's recovery." *Miller*, 972 F.3d at 983–84 (quoting *Gottshall*, 512 U.S. at 542).

Courts "liberally construe[] FELA to further Congress'[s] remedial goal."  *Id.* (second alteration in original) (quoting *Gottshall*, 512 U.S. at 543).  "That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute." *Gottshall*, 512 U.S. at 543.  Accordingly, liability under FELA attaches only because of a railroad's "negligence, not the fact that injuries occur."  *Id.* (quoting *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947)); *see also Miller*, 972 F.3d at 987 (quoting *Wilkerson v. McCarthy*, 336 U.S. 53, 61 (1949)) (explaining that FELA "does not make the railroad an absolute insurer against personal injury damages suffered by its employees").  But if an employee is injured because of an unsafe condition, the employer is liable if its negligence or its other employees' negligence "played any part, even the slightest, in producing the employee's injury."  *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) (citation omitted); *see* 45 U.S.C. § 51.

To prevail on a FELA negligence claim, the plaintiff must show "by direct or circumstantial evidence" that:

> (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care.

*Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 161 (8th Cir. 1981).  The plaintiff "must prove the common law elements of negligence," *Miller*, 972 F.3d at 987, "as established and applied in federal courts," *Brown*, 650 F.2d at 161 (citing *Urie v. Thompson*, 337 U.S. 163, 174 (1949)).  "FELA does not incorporate common law

'proximate causation,'" but "reasonable foreseeability of harm is an essential ingredient of FELA negligence." *Burckhard v. BNSF Ry. Co.*, 837 F.3d 848, 853 (8th Cir. 2016) (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 702–03 (2011)); *see Miller*, 972 F.3d at 988 (explaining that an employer's "knowledge" of an unsafe condition is "an affirmative element" of a FELA negligence claim).  Therefore, to survive summary judgment, Olson must proffer evidence showing a genuine issue of material fact that Union Pacific "knew or had reason to know" of the existence of an unsafe condition that could result in his injuries. *Id.*  Reasonable foreseeability of harm is a question of fact. *Burckhard*, 837 F.3d at 854 (collecting cases).

Olson alleges two theories of negligence relating to the December 2021 incident that resulted in his injuries: (1) that a Union Pacific employee altered the speed swing in violation of Union Pacific Rule 1.23 by bypassing the armrest safety feature; and (2) that Jonathan negligently failed to stop the speed swing before exiting it in violation of Union Pacific Rule 43.5, which would have prevented Olson from being injured.  *See* ECF No. 53 at 13–14.

### A.   Bypassed Safety Mechanism

Union Pacific argues that Olson's claim relating to the bypassed armrest safety feature fails because "there is no documentation nor testimony establishing Union Pacific's notice that the safety mechanism on the speed swing was bypassed or broken." ECF No. 46 at 11.  Union Pacific highlights the fact that the speed swing was inspected at a Union Pacific facility in April 2021, eight months before the December 2021 incident, and was found to be safe to operate.  *Id.*; *see* ECF No. 50 at 56:11–57:5.  Union Pacific also cites

8

evidence showing that there were no reported incidents relating to the speed swing, including the armrest safety mechanism, in the time between the April 2021 inspection and the December 2021 incident, and that at least two other Union Pacific employees (besides Jonathan) used the speed swing in the days preceding the incident without issue.  *See* ECF No. 46 at 11–12; *see also* ECF No. 48 at 63:3–12, 64:11–16; ECF No. 49 at 61:5–11.  And Union Pacific highlights that there is no direct evidence that the person who bypassed the safety mechanism was a Union Pacific employee.  *See* ECF No. 46 at 12; *see also* ECF No. 48 at 107:12–22; ECF No. 49 at 63:25–64:2; ECF No. 50 at 17:4–12.  Union Pacific therefore contends that it was not aware and had no reason to believe that the speed swing's safety mechanism was broken and disabled.  *See* ECF No. 46 at 11–12.

Olson responds that "one of [Union Pacific's] employees" had to have knowledge that the safety mechanism was broken because "one of [Union Pacific's] employees rewired the safety device to where it was 'bypassed.'"  ECF No. 53 at 15.  Olson cites deposition testimony by Porter in which Porter agreed that "only Union Pacific employees would have been maintaining and repairing" the specific speed swing Jonathan used when Olson was injured, and Porter opined that it is "more than likely" that "a Union Pacific employee" bypassed the safety mechanism.  ECF No. 50 at 50:9–51:7.

As an initial matter, Union Pacific objects to Olson's reliance on Porter's deposition testimony on the basis that the testimony is "inadmissible" because "it relies on speculation" and "lack[s] foundation."  ECF No. 56 at 3–4.  But "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form."  *Lipp v. Cargill Meat Sols.*

9

*Corp.*, 911 F.3d 537, 544 n.6 (8th Cir. 2018) (citation omitted); *see* Fed. R. Civ. P. 56(c)(2). If this matter proceeded to trial, Porter presumably would be called to testify as a lay witness.   Relevant here, a witness's testimony "must be based on [his] personal knowledge." *Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 464 (8th Cir. 2013) (citing Fed. R. Evid. 602).  And a lay witness's opinion testimony must be "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701(a)–(b).  "Personal knowledge or perceptions based on experience is a sufficient foundation for such testimony."  *Am. Bank of St. Paul*, 713 F.3d at 465 (citation omitted).

Although Porter testified that he was unable to determine who specifically was responsible for bypassing the safety mechanism, *see* ECF No. 50 at 17:4–12, his opinion that it is "more than likely" that "a Union Pacific employee" bypassed the safety mechanism, *id.* at 50:23–51:7, is based on more than pure speculation.  Rather, viewing the record in the light most favorable to Olson, *see Black*, 113 F.4th at 1031, it appears Porter's opinion is based on his perceptions following his investigation into the December 2021 incident and information that is well within his personal knowledge and experience as a Work Equipment Manager for Union Pacific.  For instance, Porter testified that it was his "understanding or knowledge" that only "Union Pacific mechanics or employees ha[d] worked on" the speed swing.  *Id.* at 50:9–17.  And given that Porter has been a Work Equipment Manager for Union Pacific since 2014 and was a "work equipment supervisor" for six years prior to assuming a management role, *id.* at 6:11–17, his perceptions based on his experience could constitute "sufficient foundation" for his testimony, *Am. Bank of*

10

*St. Paul*, 713 F.3d at 465.  The Court therefore finds it likely that Porter's testimony "could be presented at trial in an admissible form," *Lipp*, 911 F.3d at 544 n.6 (emphasis omitted) (citation omitted), and will consider the testimony for purposes of Union Pacific's motion for summary judgment.[3]

With that preliminary issue resolved, the Court finds that there are genuine issues of material fact as to whether the safety mechanism was bypassed by a Union Pacific employee and, if so, whether that establishes notice to Union Pacific.  It is true, as Union Pacific argues, that there is no direct evidence in the record showing that a Union Pacific employee bypassed the safety mechanism.  *See* ECF No. 48 at 107:12–22; ECF No. 49 at 63:25–64:2; ECF No. 50 at 17:4–12.  But Porter's deposition testimony is "circumstantial evidence," *Brown*, 650 F.2d at 161, that supports a "justifiable inference[]" that a Union Pacific employee was responsible for bypassing the safety mechanism, *Black*, 113 F.4th at 1031 (citation omitted).[4]

Whoever bypassed the safety mechanism clearly had knowledge they had done so, and whether that person was a Union Pacific employee directly affects the issue of Union Pacific's notice.  Union Pacific, citing principles of agency law, argues that the person's

---

[3]    To be clear, the Court does not decide here that Porter's testimony at trial regarding these issues necessarily *would* be admissible.  If this matter proceeds to trial, Union Pacific may renew its objections either through a motion in limine or during any questioning that elicits such testimony.

[4]    The Eighth Circuit's Model Civil Jury Instructions deal with "direct evidence" and "circumstantial evidence."  In fact, jurors are instructed that they "should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence."  Comm. on Model Jury Instructions, *Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* § 1.04 (2025).

knowledge cannot be "imputed" to Union Pacific because they "act[ed] adversely" to Union Pacific's interests. ECF No. 46 at 10 (quoting *Timeless Bar, Inc. v. Ill. Cas. Co.*, 734 F. Supp. 3d 886, 898 (D. Minn. 2024)). But any railroad employee or agent who commits a negligent act that results in another employee being injured could be said to have "act[ed] adversely" to the railroad's interests. *Timeless Bar*, 734 F. Supp. 3d at 898 (internal quotation marks omitted) (citation omitted). Regardless, this exception to imputation of knowledge "applies only where the agent acts 'solely for her own benefit.'" *Id.* (quoting *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*, 241 F. Supp. 3d 934, 939–40 (D. Minn. 2017)). And there is no evidence that the person who bypassed the safety mechanism did so "solely for [their] own benefit." *Id.* (citation omitted). To the contrary, Porter offered his opinion, based on his post-accident investigation, that whoever bypassed the speed swing's safety mechanism did so because "they realized it was broke" and "needed that machine to work or function" but failed to "alert the equipment folks to fix it." ECF No. 50 at 16:19–17:3.[5]

Union Pacific also argues that knowledge of the bypassed safety mechanism cannot be imputed to Union Pacific because the "relevant knowledge [was] held by an agent who does not exercise a sufficient degree of control over [Union Pacific's] affairs." ECF No. 46 at 10 (quoting *FDIC v. Deloitte & Touche*, 834 F. Supp. 1129, 1138 (E.D. Ark. 1992)). But

---

[5]    Neither party cites to this portion of Porter's deposition testimony, but the Court may consider it. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). To the extent Union Pacific extends its objections to this portion of Porter's testimony, the Court finds it likely that this testimony "could be presented at trial in an admissible form" for the reasons already discussed. *Lipp*, 911 F.3d at 544 n.6 (emphasis omitted) (citation omitted).

Union Pacific does not know who bypassed the safety mechanism and provides no evidence conclusively establishing that the person lacks such control over its affairs. *See* ECF No. 50 at 17:4–12. In any event, "by the terms of the statute, a railroad's liability under FELA encompasses the negligence of any of its 'officers, agents, or *employees*,' not merely of its supervisory employees." *Hemling v. Soo Line R.R. Co.*, No. 19-cv-894-JDP, 2021 WL 534892, at *3 (W.D. Wis. Feb. 12, 2021) (emphasis added) (quoting 45 U.S.C. § 51). And the Eighth Circuit likewise has held that an accident is foreseeable if "an officer, *employee* or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition" or if "at least one of such persons had actual knowledge of its presence before the accident." *Brown*, 650 F.2d at 161 (emphasis added).

*Hemling* is instructive. There, a railroad employee was injured and later died after he was "crushed between a train car and lumber stacked very close to the tracks." *Hemling*, 2021 WL 534892, at *1. His wife brought a FELA claim on his behalf and alleged the improperly stacked lumber constituted negligence that resulted in the employee's death. *See id.* The railroad argued on summary judgment that there was no evidence the railroad had actual or constructive notice of the improperly stacked lumber, asserting that it "was a one-time occurrence" that the railroad "didn't know about and couldn't have discovered." *Id.* at *2. The court disagreed, citing deposition testimony by another employee who stated that "he saw 'lumber on the side of the track' within the clearance area" a few days before the accident, but "didn't report the clearance violation" to a "supervisory employee." *Id.* at *2–3. That employee also testified that "he didn't remember being trained to report obstructions within the customer safety handbook's eight-and-a-half-foot clearance

13

requirement," and that "if he had been trained on the handbook's clearance requirement, he would have reported to his supervisor that the lumber was too close to the track." *Id.* at *3. Citing *Brown*, the Court denied the railroad's motion for summary judgment and concluded that the testimony "provide[d] a basis for [the railroad's] knowledge and its negligence" under FELA. *Id.*

The facts in this case are similar. Someone created an unsafe condition when they bypassed the speed swing's safety mechanism and failed to report that act. *See* ECF No. 50 at 15:16–16:14. There is sufficient circumstantial evidence in the record, in the form of Porter's deposition testimony, to infer that the person responsible was a Union Pacific employee. *See* ECF No. 50 at 15:16–16:14, 50:9–22. And Union Pacific's rules prohibit machine operators from "alter[ing], nullify[ing], [or] chang[ing] the design of or in any manner restrict[ing] or interfer[ing] with the normal function of any device or equipment . . . except in case of emergency" and require that any such changes be "report[ed] to the proper supervisor." *Id.* at 20:22–21:13. But Porter disclaims that any such report was made. *See id.* at 16:16–17:3. As a result, although the speed swing's boom arm should not have continued operating when Jonathan lifted the armrest to exit the machine, the boom arm moved and the piece of rail attached to it struck Olson, leaving him injured. *See* ECF No. 48 at 73:2–5, 84:14–16, 86:13–18, 91:5–92:9; ECF No. 49 at 34:8–11, 37:3–8; *see also* ECF No. 50 at 36:7–17. As in *Hemling*, this evidence "provides a basis for [Union Pacific's] knowledge and its negligence." 2021 WL 534892, at *3.

Union Pacific cites *Miller*, which also involved similar facts, but that case is distinguishable. In *Miller*, the plaintiff was injured in an accident after a train he was

14

operating passed over a misaligned switch. 972 F.3d at 982. The plaintiff alleged, in part, that the railroad breached its duty of care under FELA because it failed to properly align the switch. *Id.* at 987. The Eighth Circuit concluded that the railroad could not be liable for failing to properly align the switch because "[t]here was no evidence that [the railroad] was aware the switch was not properly aligned." *Id.* at 988. Specifically, the Eighth Circuit found that the railroad had "twice inspected the switch within days of the accident and another train safely passed over the switch the day before the accident," and that the plaintiff "produced no evidence that [the railroad] was aware or had reason to believe that the switch had been or would be misaligned by a third party." *Id.* Importantly, however, the Eighth Circuit discussed whether the railroad could be found liable if a railroad employee, rather than a third party, was responsible for the misaligned switch:

> As the district court noted, even if the person who misaligned the switch was a [railroad] employee, [the plaintiff] did not point to any evidence that the employee was acting within the scope of employment. Thus, [the railroad] would not be liable for the purported rogue employee's act under a respondeat superior theory.

*Id.* at 988 n.5.

Here, Union Pacific cites evidence similar to that in *Miller* that the speed swing was inspected and found safe to operate six months before the December 2021 incident that caused Olson's injuries and that Union Pacific employees other than Jonathan had operated the speed swing without issue in the days preceding the incident. *See* ECF No. 48 at 63:3–10, 64:11–16; ECF No. 49 at 61:5–11; ECF No. 50 at 56:11–57:5. However, Porter's testimony that it is "more than likely" that "a Union Pacific employee" bypassed the speed swing's safety mechanism, ECF No. 50 at 50:9–51:7, and that the person who bypassed

15

the safety mechanism did so because "they realized it was broke" and "needed that machine to work or function," *id.* at 16:19–17:3, supports a reasonable inference that the person who bypassed the safety mechanism was a Union Pacific employee who was acting within the scope of their employment. And unlike *Miller*, where there was no "reason to believe that the switch had been or would be misaligned" by any one person, 972 F.3d at 988, the evidence here shows—and Union Pacific does not dispute—that the speed swing's safety mechanism was intentionally bypassed, *see* ECF No. 50:9–51:7.

It is true, as Union Pacific contends, that Olson cites no evidence showing that any Union Pacific officer or employee "gave authority to bypass the safety switch." ECF No. 56 at 10. But Union Pacific cites no legal authority for the proposition that a railroad may only be held liable for negligent acts that are expressly authorized by the railroad's officers or supervisory employees. Such a narrow reading of FELA is at odds both with the language of the statute—which states railroads are liable for injuries "resulting in whole or in part from the negligence of *any* of the [railroad's] officers, agents, or *employees*," 45 U.S.C. § 51 (emphasis added)—and with the instruction that courts are to "liberally construe[] FELA to further Congress'[s] remedial goal," *Miller*, 972 F.3d at 983–84 (second alteration in original) (quoting *Gottshall*, 512 U.S. at 543).

Finally, in its post-hearing supplemental briefing, Union Pacific contends that denying its motion for summary judgment would effectively "subject Union Pacific to a negligence per se standard not contemplated by the FELA whenever an employee is injured by the act of an unknown but assumed railroad employee at an unknown date and time without Union Pacific having been afforded the opportunity to discover and cure." ECF

16

No. 60 at 5. Union Pacific's concerns are misplaced. Denial of Union Pacific's motion for summary judgment is not a finding of Union Pacific's liability under FELA, but rather a finding that genuine issues of material fact preclude summary judgment. A jury—not the Court—must weigh the evidence and decide whether Union Pacific is liable. Moreover, the Court would be remiss if it did not acknowledge that Union Pacific—not Olson—was in the best position to thoroughly investigate the circumstances of Olson's accident and to identify the person responsible for bypassing the speed swing's safety mechanism. Given the circumstantial evidence Olson proffers—in the form of testimony from a management-level Union Pacific employee—and considering FELA's remedial purpose, it would be a perverse outcome to grant summary judgment to Union Pacific because of Olson's inability to proffer direct evidence of that person's identity when Union Pacific itself failed to identify that employee.

For these reasons, the Court concludes that there are genuine issues of material fact as to whether Union Pacific had notice of the bypassed safety mechanism. Accordingly, Union Pacific's motion for summary judgment as to Olson's claim relating to the bypassed safety mechanism is denied.

### B.    Jonathan's Purported Violations of Rule 43.5

Olson alternatively argues that his "injury would never have happened" had Jonathan not violated Union Pacific's Rule 43.5, ECF No. 53 at 14–15, which requires a machine operator to "stop the engine when practical" and "lower or securely support . . . suspended loads" before exiting a machine, ECF No. 50 at 96:16–97:4. Union Pacific objects to this argument as an improper attempt to "introduce a brand new theory of

17

liability" which Olson did not plead in his complaint and of which Union Pacific had no notice prior to Olson filing his response to Union Pacific's motion for summary judgment. ECF No. 56 at 11–12.

Union Pacific is correct. The Court "construes a complaint liberally." *Allan v. Minn. Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025) (citation omitted). But the "essential function of notice pleading is to 'give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*.'" *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992–93 (8th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). An important part of this essential function is that the complaint "guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Therefore, while "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004); *see Kellar v. Wills*, 186 F. App'x 714, 716 (8th Cir. 2006) (affirming summary judgment rejecting a "new theory of liability [that was] not asserted in [the] complaint" because it "was not properly before the district court"); *Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins.*, 690 F. Supp. 3d 1104, 1114 (C.D. Cal. 2023) (quoting *Coleman*, 232 F.3d at 1292–93) ("A plaintiff cannot allege one theory of liability in a complaint and then 'turn around and surprise [a defendant] at the summary judgment stage' with a different theory of liability." (alteration in original)).

18

Olson's complaint contains specific allegations relating to the speed swing's safety mechanism, the fact that it was bypassed, and that Olson was injured as a result of the safety mechanism failing to stop the speed swing's operation. *See* ECF No. 1 ¶¶ 4–9. Importantly, the complaint specifically alleges that bypassing the safety mechanism constitutes a violation of Union Pacific's Rule 1.23, which generally prohibits altering equipment. *Id.* ¶ 8(j); *see* ECF No. 50 at 20:22–21:13. The complaint does not, however, identify Rule 43.5, allege any violation of that rule, or even provide a hint that Jonathan's alleged negligence would be at issue in this lawsuit. *See generally* ECF No. 1. Nor did Olson amend his complaint to include any allegations relating to any violation of Rule 43.5. As a result, Union Pacific was not on notice that Jonathan's purported Rule 43.5 violations were a "ground[] upon which [Olson's FELA claim] rests." *WireCo*, 897 F.3d at 992–93 (emphasis omitted) (quoting *Twombly*, 550 U.S. at 555).

Olson cites Porter's deposition testimony in support of his claim that if Jonathan "had followed [Union Pacific's] Rule when he was operating the speed swing, [Olson's] career ending injury never would have happened." ECF No. 53 at 14 (citing ECF No. 50 at 108:12–111:1). But merely inquiring about Jonathan's purported violations of Rule 43.5 in discovery "did not notify [Union Pacific] that [Olson] intended to pursue a new ground" of liability. *WireCo*, 897 F.3d at 993 n.5. Instead, Olson "should have alleged in his complaint," or sought to amend his complaint under Rule 15 of the Federal Rules of Civil Procedure, to allege that Jonathan's purported violations of Rule 43.5 were a basis for Union Pacific's liability under FELA. *Trambly v. Bd. of Regents of Univ. of Neb.*, 145 F.4th 922, 927 (8th Cir. 2025). Olson did not do so, and Union Pacific "was not required to intuit

19

additional theories of liability that were not apparent from [his] complaint." *WireCo*, 897 F.3d at 993.

Accordingly, because Olson may not pursue a theory of liability based on Jonathan's purported violations of Rule 43.5, Union Pacific's motion for summary is granted as to that theory of liability.[6]

**CONCLUSION**

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED:**

1. Union Pacific's Motion for Summary Judgment (ECF No. 45) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Motion is **GRANTED** as to Olson's theory of liability relating to violations of Rule 43.5; and

    b. The Motion is **DENIED** as to Olson's theory of liability relating to violations of Rule 1.23.

---

[6]   As a final housekeeping matter, on February 9, 2026, Union Pacific filed a motion seeking to exclude certain expert opinion testimony by one of Olson's expert witnesses. ECF No. 35. Olson filed a response in opposition. ECF No. 59. Union's motion and the expert's report are directed towards issues that are not relevant to Union Pacific's motion for summary judgment, *see generally* ECF No. 37, and neither party cites to nor relies on the expert's opinion for purposes of Union Pacific's motion for summary judgment. *See generally* ECF Nos. 46, 53, 56. At the hearing on Union Pacific's motion for summary judgment, Union Pacific explained that it filed its motion to exclude portions of the expert's testimony to preserve its objections because of concerns about the nondispositive-motion deadline in the scheduling order for this case. In addition, the parties confirmed their agreement and understanding that Union Pacific's motion should be construed as a motion in limine that should be addressed as a pretrial matter should this case proceed to trial. Accordingly, Union Pacific's motion, ECF No. 35, is denied without prejudice as moot. The Court will provide information regarding motions in limine once a trial date has been scheduled.

2. Union Pacific's Motion To Exclude Certain Opinions of Jesse Ogren (ECF No. 35) is **DENIED** without prejudice as moot.

Dated: July 6, 2026                          *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge